J. R. Swan, C. J.
Counsel for the plaintiffs, we think, lay too much stress upon the words “ due west.” In this state two meridians have been adopted in the survey of the public lands. In the Virginia military district the original surveys were made by the magnetic meridian. Most of the congress lands were surveyed by the true meridian. In contracts and private surveys the magnetic meridian has been generally adopted.
Where an original survey has been made by the true meridian, and contracts are made and deeds executed for parts of such surveys, calling for and adopting the calls of parts of the original lines of the survey in the description, it, is clear that such calls of the original courses mean the true meridian; and if the contracts or deeds thus made call for courses originally surveyed by the magnetic meridian, it is equally clear that such calls mean the magnetic meridian. In the subdivision lines, and in contracts of sale and deeds for parts of sections originally surveyed by the true meridian, subdivision lines, having no reference to the original lines, would, in general, be surveyed by the magnetic meridian, as such is the usual mode of surveying lands in all parts of the state.
It is manifest from all this, that, in respect to surveys in this state, “ west ” or “ due west,” in one class of original surveys, means a line at a right angle to the true meridian; and in another class “ west ” or “ due west ” is *427 west according to the bearings of the surveyor’s compass at the time of the original survey. In giving, then, an interpretation to these words, a fixed, determinate, judicial construction cannot be adopted, and their meaning must frequently depend upon and be controlled by extraneous facts.
In the case before us, the fact that the original section was owned in common; that the calls of the courses of the original survey were for the true or the magnetic meridian; that the original purchasers from the government, or their representatives, in using the words “ due west,” were or were not doing so with a View to a subdivision of the section between them, and with reference to the original courses, were proper subjects of inquiry and consideration for the jury, under the direction of the court, to determine the disputed line.
The court below seem to have been of the opinion that in consequence of the decree made on the contract of Thomas McKinney to convey, the question of the construction of the words “ due west,” should be confined to their interpretation as used by the court, without reference to the contract upon which the decree was made; and that, therefore, in construing the words, no evidence showing the surrounding circumstances under which the contract was made, and the words were used by the parties, could be received. In this we think the court were mistaken. The decree was not of an adversary character. It merely confirmed, a contract and rendered it operative; and the description of the premises in the contract and in the decree is identical. The decree is the language of the parties adopted by the court, and the decree must be construed in view of the whole record. The court use the words as the parties had used them, and in affirmation of their contract set forth in the record, and upon which the decree was made.
Some of the lands in Ohio, which the act of congress required to be surveyed by the true meridian, were sur *428 veyed by the magnetic meridian. Am. State Papers, Lands, vol. 1, 83. If the maps of the state conld be regarded as evidence, the lands in Miami county would seem to indicate that they were not surveyed by the true meridian. But whether they were or not was a fact, slight it may be, but one to which the parties were entitled in giving construction to the words “ due westthe courts being precluded from giving them, in every case, a uniform judicial interpretation, inasmuch as the magnetic and true meridian have been adopted in different surveys.
The fact that an original survey was made by the magnetic meridian would raise a strong, perhaps a conclusive presumption that all deeds and contracts, referring as well to the original as subdivision lines, had reference to the magnetic meridian. And even where the original survey was made by the true meridian, calls of courses of new subdivision lines, unless so made in reference to the original courses as to manifest an intention to be controlled by original courses, would in general be run by the magnetic meridian, as that is the general and customary usage in running lines; hut each case must depend so much upon the calls, the connection of the subdivision lines with the original true meridian lines and other facts and circumstances, that no definite general rule of construction can he prescribed.
It is unnecessary to say more, or to find, indeed, that the court below erred as to the construction of the words under consideration upon this part of the case, as the judgment below, we think, must be reversed at any rate upon another assignment of error.
As to the limitation of the action for mesne profits.
The limitation of actions prescribed by the code does not apply to cases where the right of action had accrued before the code took effect; and the statutes theretofore in force are applicable to such cases according to the subject of the action, and without regard to the form. The code has substituted for the action of trespass for mesne *429 profits which was limited to four years, an action which is described in the code as a claim for “ damages for withholding real property and for the rents and profits.” Such cause of action may, under the code, be united with an action for the recovery of real property. These two causes of action are separate, and should have been separately stated and numbered in the petition. The defendant, however, did not think proper to object by motion on this account; and having answered both causes of action, and proceeded to trial, he has waived all objection to this informality.
We have already held, at the present term of this court, that where the petition on its face discloses that the cause of action is barred, the defendant may, by demurrer, specify that the petition shows a cause of action barred by statute.
This ruling is in analogy to the practice in courts of equity. Like rules of equity pleading, however, require a defendant, where the cause of action is so stated in the petition that he cannot demur, to plead the bar, otherwise he waives the defense. So, under the code, the defendant in this case should have insisted by his answer upon the bar of the statute, and by not doing so, waived that defense.
The court below, therefore, erred in allowing the defense of the statute of limitations upon an answer simply denying the allegations of the petition.
We do not deem it necessary to decide the other questions made by the petition in error.
The judgment below will be reversed and the cause remanded for a new trial.
Brinkekhoff, Scott, Sutliff and Peck, JJ., concurred.